```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

CLARK KENNEDY, II,

    Plaintiff,

v.                                    CIVIL ACTION NO. 1:08-0891

PAUL KENNEDY, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Paul Kennedy's renewed motion for judgment as a matter of law or, in the alternative, motion for a new trial.  For the reasons discussed below, the motion is DENIED.

## I. Background

Defendant Paul Kennedy and his brother and sisters were the owners of approximately 1,000 acres in McDowell County, West Virginia (hereinafter "the property").  Paul Kennedy and his brother, the late Clark Kennedy, Sr., each had a 5/12 interest in the property and their sisters, defendants Anise Jean Jones and Norine Harman, each had a 1/12 interest.[1]  After Clark Kennedy, Sr.'s divorce in 1991, his ex-wife, Joyce Kennedy, acquired a

---

[1] The property was originally acquired by Clark Kennedy, Sr., Paul Kennedy, and their father, each of whom had a 1/3 interest.  On the death of their father, his 1/3 interest passed to their mother.  When their mother died, she left her interest in equal parts to each of the four siblings:  Clark Kennedy, Sr., Paul Kennedy, Anise Jean Jones, and Norine Harman ("the Kennedy heirs").

forty (40) percent royalty interest in the mineral rights to his original one-third of the property.

After a time, the Kennedy heirs became interested in selling the property and attempted to do so for several years. The original asking price was two million dollars for the mineral rights. After efforts to sell the property proved unsuccessful, the Kennedy heirs agreed to pay a commission equal to ten (10) percent of the asking price ($200,000.00) to an individual named Jimmy Wedge if he could find a buyer for the property. In order to cover the commission, the asking price was raised to $2,200,000.00, of which $200,000 would be paid to Wedge for finding a buyer.

Plaintiff, Clark Kennedy, Jr., the son of Clark, Sr., (hereinafter "Clarkie") alleged that the Kennedy heirs agreed to pay a $200,000 commission to <u>anyone</u> who found a buyer for the property. To that end, Clarkie, in addition to various other members of the extended family, took efforts to find a buyer for the property. On November 15, 2007, an agreement for the sale of the coal property was eventually reached between the Kennedy heirs and an entity named Lopin Red Ash, Inc. David Hopkins, an individual long known to the Kennedys, contacted Clarkie regarding Lopin's offer to buy the coal and, in turn, Clarkie communicated the offer to his family. Although David Hopkins was not affiliated with or an agent of Lopin Red Ash, it is clear

that the Kennedys thought he was.  The agreement called for Lopin to pay the full asking price of 2.2 million but allowed it to do so over time.  The sale between the Kennedy heirs and National Resources, Inc., to whom Lopin Red Ash has assigned its mining permits for the property, was completed on November 28, 2007.

Because Clarkie had worked with David Hopkins in attempting to sell the property, he contends that he was the one who eventually brought a buyer to the table and that, therefore, he is owed the $200,000.00 commission.  Clark, Sr. and Joyce Kennedy paid Clarkie their proportionate share (5/12) of the total commission.  Paul Kennedy, Anise Jean Jones, and Norine Harman have maintained that no commission is due Clarkie because (1) they did not agree to pay such a commission; and (2) Clarkie did not locate a buyer for the property.

Clarkie Kennedy filed the instant lawsuit on May 28, 2008, in the Circuit Court of McDowell County, against defendants Paul Kennedy and his wife, Ruby Kennedy; Anise Jean Jones; and Norine Harman.  The case was removed to this court on the basis of diversity of citizenship.  In his lawsuit, plaintiff asks that each defendant be required to pay his or her proportionate share of the $200,000.00 commission based upon their ownership percentage.

Following jury selection on March 31, 2010, trial of this matter began on April 1, 2010.  At the end of plaintiff's case,

3

the court granted defendant Ruby Kennedy's motion for judgment as a matter of law and she was dismissed from the case. After a two-day trial, the jury returned a verdict in favor of plaintiff on his claims against Paul Kennedy and awarded damages in the amount of $117,000. As to plaintiff's claims against Anise Jean Jones and Norine Harman, the jury found in defendants' favor. On April 5, 2010, the court entered judgment in plaintiff's favor against Paul Kennedy in the amount of $117,000.00. The instant motion followed.

## II. Standard

### A. Renewed Motion for Judgment as a Matter of Law

Defendant's motion requests judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The United States Court of Appeals for the Fourth Circuit has held that judgment as a matter of law is appropriate on an issue where there is "no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue . . . " and ". . . on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue." Goedel v. Norfolk & W. Ry., 13 F.3d 807, 808 n.1 (4th Cir. 1994) (citing Fed. R. Civ. P. 50(a)(1)). The court notes that under Rule 50, the renewed motion must be just that; in other words, the party must have moved pre-verdict under Rule 50(a) for judgment as a matter of law before being permitted

post-verdict to renew its motion under Rule 50(b). Price v. City of Charlotte, N.C., 93 F.3d 1241, 1248-49 (4th Cir. 1996). However, the court takes an "indulgent view" as to whether the initial pre-verdict motion for judgment as a matter of law was a sufficient predicate for the post-trial motions. See Singer v. Duncan, 45 F.3d 823, 828-29 (4th Cir. 1995).

**B. Motion for New Trial**

Pursuant to Federal Rule of Civil Procedure 59, a court may "on motion grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." In deciding a motion for a new trial, a court is "permitted to weigh the evidence and consider the credibility of witnesses." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). According to our court of appeals, "[a] new trial is warranted when (1) the verdict is against the clear weight of the evidence; (2) the verdict is based upon evidence which is false; or (3) the verdict will result in a miscarriage of justice." Conner v. Schrader-Bridgeport Intern., Inc., 227 F.3d 179, 200 (4th Cir. 2000) (quoting Atlas Food Sys. and Serv., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)). "The grant or denial of a motion for a new trial is entrusted to the sound discretion of the district court and will be reversed on

appeal only upon a showing of abuse of discretion." <u>Bennett v. Fairfax County</u>, 432 F. Supp.2d 596, 599 (E.D. Va. 2006).

### III. Analysis

Defendant argues that the court should grant his renewed motion for judgment as a matter or law or, in the alternative, grant a new trial because (1) there was insufficient evidence for the jury to conclude plaintiff had an agreement with Paul Kennedy for the payment of a commission or to conclude that Clarkie "brought a buyer to the table;" (2) the court erred in admitting certain testimony of Joyce Kennedy; and (3) a reasonable jury could not have heard the evidence and court's instructions and awarded damages in the amount of $117,000.00 against Paul Kennedy.  The court takes each in turn.

**A.  There was insufficient evidence for a reasonable jury to conclude that Clarkie had an agreement with Paul Kennedy for the payment of a finder's fee or to conclude that he had secured a buyer for the property.**

In his motion, defendant takes great pains to show why plaintiff and his witnesses were not entirely credible and why Paul Kennedy was a more credible witness whose testimony the jury should have believed over plaintiffs' witnesses.  Clarkie Kennedy, Joyce Kennedy, Sabrina Brown, and Mark Kennedy all testified that Paul Kennedy had agreed to pay a finder's fee to anyone who found a buyer for the property.  Clarkie testified that Paul told him that such a finder's fee would be payable to

6

Clarkie if he was the one to locate a buyer.  There was also evidence that, due to his desire to earn such a commission, Clarkie undertook efforts to locate a buyer for the property.

Although Paul Kennedy testified otherwise, the court cannot conclude that there was a legally insufficient evidentiary basis for a reasonable jury to have found for Clarkie on this issue.  Therefore, the court DENIES defendant's renewed judgment as a matter of law on this ground.  For the same reason, the court cannot conclude that the verdict as to this issues was against the clear weight of evidence, based on false evidence, or would result in a miscarriage of justice.  For that reason, the motion for a new trial is DENIED.

As to defendant's argument that there was insufficient evidence to support the jury's conclusion that Clarkie located a buyer for the property, the court likewise concludes that the motion for judgment as a matter of law and motion for a new trial should both be denied.  It is undisputed that David Hopkins was the conduit between the Kennedys and Lopin Red Ash.  Both Clarkie and Hopkins testified regarding Clarkie's role in the eventual sale and Hopkins and Clarkie both stated that Clarkie was Hopkins' "go to" person in his efforts to find a buyer.  To that end, Clarkie was the one who actually presented an offer to his family which eventually resulted in the sale of the property.  Although Paul Kennedy testified that he had extensive contact

with David Hopkins over the sale of the property, Hopkins did not bring a proposed contract to Paul Kennedy first. Clearly, the jury credited the testimony of Clarkie and Hopkins over that of Paul Kennedy as to this issue and the court cannot find that the jury's verdict was against the clear weight of the evidence. See Kessell v. South Charleston Stamping & Mfg. Co., 36 Fed. Appx. 734, 737 (4th Cir. 2002) ("It was within the province of the jury to evaluate the evidence and accept the theory it found most credible. And it did just that.").

**B.  Improper testimony of Joyce Kennedy.**

During plaintiff's case, he called his mother, Joyce Kennedy, as a witness. Joyce Kennedy testified that she had married Clark, Sr. in 1964 and that they were divorced in 1991. Joyce Kennedy further testified that, during her marriage, Clark acquired a one/third interest in the property at issue herein. Because of her marriage to Clark Kennedy, Joyce Kennedy stated that she believed the one/third interest belonged to both her and Clark. After her divorce, Joyce testified that she acquired a forty percent interest in the mineral rights from Clark's third of the property.

Joyce Kennedy testified regarding the decision to sell the property at issue. In so doing, she made statements such as "we decided to sell the property." Defendants objected to her use of the term "we" in describing her role in the transaction because

8

she was not an owner of the property.  The court overruled defendants' objection given that Joyce Kennedy did have an interest in the mineral rights from Clark Sr.'s portion of the property.  Defendant Paul Kennedy now argues that Joyce Kennedy's testimony likely confused the jury because she made it appear that she had authority over the land which she actually did not possess and, therefore, he is entitled to a new trial.

It is undisputed that, after her divorce, Joyce Kennedy acquired a forty percent interest in the royalty rights from her ex-husband's original one-third of the property.  According to her, she continued to play a role in making decisions regarding the property, even after her divorce.  Indeed, apparently she and her ex-husband shared the cost of placing an advertisement in the <u>Wall Street Journal</u> in an attempt to sell the property.  If defendant objected to Joyce Kennedy's characterization of her involvement, which he obviously does, this was a fact that should have been brought up and explored during cross examination.  It would have been improper for the court to limit Ms. Kennedy's testimony to forbid her from using the term "we" solely because she was "not an owner."  The extent of Joyce Kennedy's interest in the property was covered on both direct and cross examination and Ms. Kennedy did not misrepresent that interest.  On cross-examination, defendant questioned Ms. Kennedy regarding her

continuing role, or lack thereof, in the management of the property after the divorce.

Based on the foregoing, defendant is not entitled to judgment as a matter of law or, in the alternative, a new trial because of the court's failure to sustain his objection to the testimony of Joyce Kennedy.

### C. A reasonable jury could not have returned a verdict of $117,000 against defendant Paul Kennedy.

The jury found in favor of plaintiff on his claims against Paul Kennedy but did not find in his favor as to his claims against Anise Jean Jones and Norine Harman. The jury awarded damages in the amount of $117,000, a figure representing the amount that would have been owed had the jury found in plaintiff's favor as to all three defendants. Indeed, the proper amount of damages as to Paul Kennedy given his ownership interest in the property would have been $83,333.32.

Plaintiff agrees that the amount of damages awarded by the jury is incorrect based on Paul Kennedy's interest in the property. Plaintiff therefore asked the court to reduce the verdict to $83,333.32, an amount representing 5/12 of the total commission of $200,000.00.

The Fourth Circuit has provided guidance as to what a trial court should do when faced with an excessive jury verdict:

> If we conclude that the jury's award of compensatory damages is excessive, we have the option of ordering a new trial nisi remittitur. Remittitur, which is used

10

>       in connection with Fed. R. Civ. P. 59(a), is a process,
>       dating back to 1822, by which the trial court orders a
>       new trial unless the plaintiff accepts a reduction in
>       an excessive jury award.  Therefore, if a reviewing
>       court concludes that a verdict is excessive, it is the
>       court's duty to require a remittitur or order a new
>       trial, and the failure to do so constitutes an abuse of
>       discretion.

Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998) (internal citations and quotations omitted).  "[J]ury determinations of factual matters such as . . . the amount of compensatory damages will be reviewed . . . by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false."  Id.

If allowed to stand, the jury's award of damages in the amount of $117,000.00 will result in a miscarriage of justice.  Given the excessiveness of the award, the court reduces the award to $83,333.32 and grants a new trial nisi remittitur at plaintiff's option.[2]

## IV.  Conclusion

For all the foregoing reasons, defendant's renewed motion for judgment as a matter of law, or, in the alternative, motion for a new trial is DENIED.  The court GRANTS remittitur on the jury's damages award and grants a new trial on that award at plaintiff's option.

---

[2] As noted earlier, plaintiff has indicated that he believes a reduction in the amount of damages to be appropriate.

11

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 21st day of October, 2010.

ENTER:

*David A. Faber* (signature)

David A. Faber
Senior United States District Judge